UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICENTE F. TORRES,<br><br>                    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                  Defendant. | Case No.: 17cv2504-GPC-LL<br><br>**REPORT AND RECOMMENDATION RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 18 and 19]** |

Plaintiff Vicente Torres brought this action for judicial review of the Social Security Commissioner's ("Commission") denial of his claim for disability insurance benefits. ECF No. 1. Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 18-1 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [ECF Nos. 19-1 ("Def.'s Mot.")], and Plaintiff's "Submission In Lieu of Reply" [ECF No. 20 ("Pl.'s Reply")].

This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment

be **GRANTED,** Defendant's Cross-Motion for Summary Judgment be **DENIED** and the case be remanded for further proceedings.

## I.   PROCEDURAL BACKGROUND

On October 1, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on October 8, 2011. See Administrative Record ("AR") at 192-198. The claim was denied initially on April 22, 2013, and upon reconsideration on February 21, 2014, resulting in Plaintiff's request for an administrative hearing. Id. at 92-93, 108-13, 118-23, 124-125.

On December 17, 2015, a hearing was held before Administrative Law Judge ("ALJ") Keith Dietterle. Id. at 48-71. Plaintiff was represented by an attorney, Linh Nguyen, at the hearing. Id. at 48-50. An interpreter, Concepcion Bateman, was also present at the hearing. Id. Plaintiff and an impartial vocational expert, John Kilcher, testified at the hearing. See id. at 48-71. In a written decision dated March 16, 2016, ALJ Dietterle determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 8, 2011 through the date of the ALJ's decision. Id. at 28-47. Plaintiff, represented by a different attorney than at the hearing, Monica Perales, requested review by the Appeals Council. Id. at 188-191. In an order dated November 2, 2017, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner. Id. at 1-9.

On December 13, 2017, Plaintiff filed the instant action seeking judicial review by the federal district court. See ECF No. 1. On August 17, 2018, Plaintiff filed a timely motion for summary judgment alleging the ALJ committed legal error by failing to properly consider Plaintiff's testimony at the hearing. See Pl.'s Mot. Plaintiff asks the Court to overturn the final decision of the Commissioner and award Plaintiff his disability insurance benefits without remand, or alternatively, to remand the case to the Social Security Administration ("SSA"). Id. at 9-10. On September 21, 2018, Defendant filed an opposition to Plaintiff's motion for summary judgment and a cross-motion for summary

judgment asserting that the ALJ properly evaluated Plaintiff's testimony and the ALJ's decision is supported by substantial evidence and free from reversible legal error.[1]  See Def's. Mot.  On October 9, 2018, Plaintiff timely filed a "Notice of Submission in Lieu of Reply." Pl.'s Reply.

## I.  DISABILITY HEARING

On December 17, 2015, Plaintiff, represented by counsel, appeared at the hearing before the ALJ.  See AR at 51-72.  During the hearing, the ALJ questioned Plaintiff regarding his work experience and alleged disability. Id. at 52-70.  The first question the ALJ asked Plaintiff is "Mr. Torres, you speak English?" Id. at 52.  Plaintiff said "Yes," and then clarified with "[a] little bit, but . . . yes." Id. The ALJ explained "we'll start the hearing in English" but "if you need help from the interpreter, just let me know." Id.  Plaintiff testified that he was born on February 2, 1957. Id. at 53.  He testified that he had a twelfth-grade education, and that he was not working at the time of the hearing. Id. at 54. Plaintiff stated that he last worked in 2010 as a caregiver to his parents. Id. Plaintiff described his responsibilities as a caregiver to his parents as "mak[ing] sure they have these medicines and the food." Id. In response to specific questions from the ALJ about his responsibilities in caring for his parents, Plaintiff testified that he did not have to carry them, or bathe them, but he cooked for them. Id. at 54-55.  The ALJ asked Plaintiff whether he had "any jobs before he [was] a caregiver?" Id. at 55. Plaintiff said "No." Id. The ALJ asked Plaintiff whether he was a driver. Id. Plaintiff said "Yeah, before." Id.  Plaintiff testified that he was

---

[1]  On June 13, 2018, the Court granted the parties' joint motion for an extension of time for Plaintiff to file a motion for summary judgment on or before June 29, 2018. ECF No. 14.  Defendant was required to file an opposition and cross-motion for summary judgment by August 10, 2018.  Id.  On July 17, 2018, the Court granted the parties' second joint motion for an extension of time for Plaintiff to file a motion for summary judgment on or before August 17, 2018. ECF No. 17.  Defendant was required to file an opposition and cross-motion for summary judgment by September 21, 2018.  Id.  Plaintiff was required to file any opposition to the cross-motion for summary judgment by October 5, 2018, and Defendant was required to file any reply brief on or before October 12, 2018. Id.

a delivery driver for automotive parts. <u>Id.</u> Plaintiff testified that he had to lift and carry "around 20 pounds" in that job. <u>Id.</u> Plaintiff then clarified that it was "15, 20 pounds." <u>Id.</u>

The ALJ then asked Plaintiff a series of questions about his health history. First, the ALJ asked Plaintiff whether he "ha[s] any difficulty, any problems with [his] back." <u>Id.</u> Plaintiff said "Yes." <u>Id.</u> Plaintiff further testified that he has "a herniated disc - - and [] arthritis in [his] back." <u>Id.</u> Regarding pain in his back, Plaintiff stated that he has pain in his back at a level "like a two—three." <u>Id.</u> at 55-56.  Plaintiff testified that he takes a medication called Naproxen for the pain in his back and that it helps. <u>Id.</u> at 56.  The ALJ asked Plaintiff whether he has any side effects from the Naproxen. <u>Id.</u> Plaintiff said that he does have side effects including "sleep" and "upset stomach." <u>Id.</u> The ALJ asked Plaintiff whether he was "treating with a doctor for [his] back problem at the present time." <u>Id.</u> Plaintiff said that a physician named Dr. Vrabel was treating him, and another physician Dr. Maribel Flores was prescribing him medication. <u>Id.</u> The ALJ asked Plaintiff "how often [he] see[s] Dr. Flores." <u>Id.</u> at 57. Plaintiff responded that he did not see Dr. Flores anymore because he sees a new doctor, Dr. Vrabel. <u>Id.</u> In response to the ALJ's question, Plaintiff confirmed that he started seeing Dr. Vrabel "about two weeks ago." <u>Id.</u> Plaintiff testified that when Dr. Flores prescribed him medication, he took it as prescribed. <u>Id.</u> Plaintiff further testified that he has diabetes and that he takes insulin for it. <u>Id.</u> Plaintiff said that the insulin causes him the side effect of "tiredness" and "sleepiness." <u>Id.</u> The ALJ then asked Plaintiff "[o]ther than the back problems and the diabetes, do you have any other problem or problems that keep you from working." <u>Id.</u> at 57-58. Plaintiff responded "glaucoma" and "high blood pressure." <u>Id.</u> at 58. Plaintiff said that was seeing a doctor for the glaucoma and that he has difficulty with his vision. <u>Id.</u> Plaintiff confirmed that he wears eyeglasses for farsightedness. <u>Id.</u> Plaintiff said that has a driver's license and drives a vehicle. <u>Id.</u> The ALJ asked Plaintiff whether "there [are] any restrictions on [his] license." <u>Id.</u> Plaintiff testified that he has a restriction on his license for his glasses. <u>Id.</u> The ALJ asked Plaintiff whether he has any difficulty sitting. <u>Id.</u> Plaintiff responded, "[s]ometimes, yes." <u>Id.</u> Plaintiff testified that he can sit for "about 30 minutes" and then he "start[s] getting

17cv2504-GPC-LL

up and start[s] walking for a little bit." Id. Plaintiff further testified that sometimes he has difficulty standing in one position and has pain. Id. at 59. Plaintiff said that he can stand for "like 30 minutes," walk "like a block, block and a half" with a cane. Id. Plaintiff said that he has used the cane since 2001 as prescribed by a doctor. Id. The ALJ asked Plaintiff why he uses the cane, and the Plaintiff responded "for balance, and for when [he] has problems to walk." Id. The ALJ asked Plaintiff what the heaviest he would lift and carry at the present time, and Plaintiff responded "[l]ike about 10 pounds." Id. at 59-60.

The ALJ next asked Plaintiff a series of questions about his living situation and his daily responsibilities. Id. at 60. Plaintiff testified that he lives with his wife, his son, his daughter, and his two grandkids. Id. Plaintiff testified that his son is thirty-two years old, his daughter is twenty-eight years old, and his grandkids are eight and seven. Id. Plaintiff testified that he does not take care of his grandkids, but he drives them to and from school approximately two blocks from the house. Id. Plaintiff testified that he not does do any household chores, but he sometimes cooks "like sandwiches or [using the] microwave." Id. Plaintiff responded that he does not do any mopping, sweeping, vacuuming, or helping with the laundry. Id. Plaintiff said that he grocery shops and he is able to carry "light groceries." Id. Plaintiff testified that he does not have any difficulty dressing, bathing, or showering himself. Id. The ALJ then asked Plaintiff whether there are "[a]ny other problem or problems that keep [him] from working, anything else that [they] ha[dn't] talked about." Id. at 62. Plaintiff responded "[j]ust [his] sickness." Id. The ALJ did not ask Plaintiff any follow-up questions about what he meant by that, but instead the ALJ said "Okay. What time do you go to bed at night?" Id. Plaintiff testified that he usually falls asleep around "10:00, 10:30" when he "take[s] [his] last dose of medicine." Id. Plaintiff testified that does not sleep all night because the "pain in the back" wakes him "like three or four times." Id. The ALJ asked Plaintiff whether he feels rested when he wakes in the morning. Id. Plaintiff responded that he does not and that he usually rests by sleeping "like four or five times" during the day. Id. Plaintiff testified that he watches television during the day. Id. at 63. The ALJ asked him whether he is "able to concentrate on what [he] watch[es] on

5

television." <u>Id.</u> Plaintiff responded "sometimes, not all." <u>Id.</u> Plaintiff said he watches TV in English, but reads in Spanish. <u>Id.</u> Plaintiff said he has "a little library" including Spanish novels and Spanish books. <u>Id.</u> Plaintiff testified that he does not belong to any clubs or social organizations, but he goes to church. <u>Id.</u> at 63-64. Plaintiff said that he has problems with his back when he sits down at church. <u>Id.</u> at 64. The ALJ asked Plaintiff how long the church services are, and Plaintiff responded "about an hour." <u>Id.</u> The ALJ asked Plaintiff whether he stays for the hour and Plaintiff said "yes." <u>Id.</u>

Next, Plaintiff's attorney, Mr. Nguyen, questioned Plaintiff. Plaintiff's attorney asked him whether he has "any issues with having tremors in [his] hands." <u>Id.</u> Plaintiff said "yes" and testified that he "went to the doctor, and [he] explained to him that [he] ha[s] some tremors in [his] head and--[his] head and [his] hands; and he says it's probably Parkinson's." <u>Id.</u> Plaintiff further testified that his heads and his hands start shaking a few times every day, and that he has difficulty doing things when his hands start to shake. <u>Id.</u> at 65. Plaintiff said that the shaking is more frequent in his right hand, so he has to use his left hand sometimes. <u>Id.</u> Plaintiff confirmed that Parkinson's runs in his family, specifically, his father had it. <u>Id.</u> Plaintiff said he planned to get tested for it "probably next year." <u>Id.</u> Plaintiff further testified that he has "issues with memory loss" that had worsened in the past year. <u>Id.</u> at 66. Plaintiff said his wife noticed that sometimes Plaintiff "forget[s] what [he is] saying" and that she has to remind him to take his insulin, which he has to take "every two hours." <u>Id.</u> Plaintiff said that he was also recently prescribed "Metformin" for diabetes approximately "two weeks ago." <u>Id.</u> Plaintiff said he suffers side effects of "upset stomach and sleepiness" from that medication. <u>Id.</u> Plaintiff testified that he also has other pain in his body, including "[his] neck, [his] back, [his] knees." <u>Id.</u> Plaintiff said that he fell once in the shower from instability in his knees. <u>Id.</u> He testified he was subsequently prescribed the cane, which he used whenever he went out and around the house. <u>Id.</u> at 67-68. Plaintiff responded to questions from his attorney about how his doctors said he needed surgeries "for [his] back and [his] eyes." <u>Id.</u> at 68. Plaintiff confirmed that has had eye surgery in the past, but he needed it again for his glaucoma. <u>Id.</u> Plaintiff also testified "the

doctor" recommended surgery for his back, but due to risks from the surgery "they don't guarantee that I will not [sic] walk again." Id. Plaintiff testified that he has difficulty concentrating and also has constant numbness and tingling in his fees due to the neuropathy from his diabetes. Id. at 69. Plaintiff's attorney asked Plaintiff whether he graduated from high school. Id. at 69-70. Plaintiff said "no." Id. at 70. Plaintiff's attorney asked him whether he got up through the 12th grade, but he did not graduate, and Plaintiff confirmed that was correct. Id.

The ALJ then questioned the vocational expert, Mr. Kilcher. Id. at 70. The ALJ asked Mr. Kilcher to categorize Plaintiff's past job history. Id. He categorized Plaintiff's past work as a "home attendant" at "the light level" but noted that Plaintiff "performed it at the medium level" "semiskilled, SVP: 3." Id. at 71. Mr. Kilcher testified that Plaintiff "also worked as a driver," "classified at the medium level," but noted that Plaintiff performed it "at the medium and heavy level" "semiskilled, SVP: 3." Id. The ALJ presented to Mr. Kilcher the first hypothetical of an individual "of advanced at [sic] with an 11th-grade education, literate, speaks English, and the work experience as outlined by yourself." Id. at 71. The ALJ further noted that in hypothetical number one the "person can do a do a [sic] full range of medium work." Id. The ALJ asked Mr. Kilcher "would that person be able to return to either of the past jobs?" Id. Mr. Kilcher said "Yes, with the exception of the driver's job" "when he performed it on the second time" "at the heavy level." Id. at 72. Next the ALJ asked Mr. Kilcher a second hypothetical as follows: "We have an individual, same type of individual, who can do a full range of light work. Would that person be able to return to either of the jobs?" Id. Mr. Kilcher testified, "No, they could not." Id. The ALJ asked whether there were "[a]ny transferable skills from the home attendant to light –other light jobs?" Id. Mr. Kilcher attested that there would be no hypothetical work for that individual. Id.

## II.  **ALJ'S DECISION**

On March 16, 2016, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act. AR at 35-48. Initially, the

ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 8, 2011, the alleged onset date. Id. at 35. He then considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "degenerative disc disease of the cervical, thoracic and lumber spine, obesity and diabetes mellitus (20 CFR 404.1520(c))." Id. at 37. At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments. Id. at 37-41. In reaching this decision, the ALJ noted that "the claimant's back impairment, while severe, does not meet or medically equal listing level severity to meet or medically equal Listing 1.04 (pertaining to disorders of the spine)." Id. at 40. The ALJ further noted that although "the claimant has some neck stenosis and a large osteophyte, [it] does not meet any of the criteria including significant disc herniation, or significant involvement with the thecal sac or nerve roots." Id. The ALJ noted that "there is no specific Section or 'listing' in the 'Listing of Impairments,' for diabetes mellitus," but the ALJ still considered this severe condition and its potential risks limitations, restrictions and co-morbidities. Id. at 40-41. Finally, the ALJ noted that there is "no specific listing or Section in the 'Listing of Impairments, for obesity, per se, the undersigned ALJ has taken the claimant's obesity into consideration, including its potential restrictions, limitations, co-morbidities and risks." Id. at 41.

To determine at step four whether Plaintiff could return to his past work, the ALJ performed a residual functional capacity ("RFC") analysis. See id. at 41-43. The ALJ considered Plaintiff's severe impairments and determined that his RFC permitted a "full range of medium work." Id. at 41. The ALJ found that Plaintiff has the RFC "to lift and carry up to 50 pounds occasionally and up to 25 pounds frequently; stand and walk up to 6 hours in an 8-hour workday; sit up to 6 hours in an 8-hour workday." Id. at 41. In reaching this decision, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and he "also considered opinion evidence in accordance with the requirements" of the regulations. Id. at 41. The ALJ noted that Plaintiff alleged disability due to "neck,

back, hip, shoulder, elbow, wrist, and knee and ankle pain. <u>Id.</u> at 41. However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." <u>Id.</u> at 42. Having completed the RFC findings, the ALJ determined that Plaintiff could return to his past work as a Home Attendant because this work is not precluded by his functional limitations. <u>Id.</u> at 43. The ALJ therefore found that Plaintiff was not disabled. <u>Id.</u>

## III. <u>STANDARD OF REVIEW</u>

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. <u>Id.</u>; <u>see also</u> <u>Batson v. Comm'r Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." <u>Lewis v. Apfel</u>, 236 F.3d 503, 509 (9th Cir. 2001) (internal citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." <u>Id.</u> (internal citation omitted). "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998) (internal citations omitted). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. <u>See</u> <u>Batson</u>, 359 F.3d at 1193. This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. <u>See</u> <u>Lewis</u>, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. <u>See</u> <u>Batson</u>, 359 F.3d at 1193. Section 405(g) permits a court to enter judgment affirming, modifying, or

reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administration for further proceedings.  <u>Id.</u>

## IV.  **DISCUSSION**

Plaintiff argues that the ALJ committed legal error because he did not properly consider Plaintiff's testimony at the hearing.  Pl.'s Mot. at 4-6.  Plaintiff explains that in October 2013, Mr. Torres reported that his conditions have worsened and that Plaintiff testified at the hearing that his combination of impairments caused him significant limitations in his activity. Pl.'s Mot. at 4 (citing AR 57-58, 233).  First, Plaintiff argues that notwithstanding his testimony at the hearing regarding his worsened conditions and resulting limitations, the "reasons provided [by] the ALJ [for finding Plaintiff's testimony not credible] are not clear or convincing." Pl.'s Mot. at 6.  Second, Plaintiff argues that the ALJ's finding that Mr. Torres' symptoms were not credible because of the lack of objective medical evidence was not supported by "specific, clear and convincing reasons for rejecting a claimant's testimony." <u>Id.</u>  Third, Plaintiff argues that the ALJ's finding that Mr. Torres was not credible because of the alleged inconsistency[2] regarding Mr. Torres' ability to speak or understand English was "an [i]naccurate characterization of the evidence warrant[ing] remand." <u>Id.</u> at 6-7.  Plaintiff states that "[h]aving the ability to speak to a doctor at a physical examination is completely different than being able to understand what is occurring at a hearing that Torres has waited for more than two years." <u>Id.</u> at 7. Fourth, Plaintiff argues that the ALJ's finding that Plaintiff was not credible due to the "existence of different medical opinions" regarding Plaintiff's condition is inadequate because the ALJ did not rely on reasons unrelated to the subjective testimony internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct. <u>Id.</u> at 7. Finally, Plaintiff argues that the ALJ "ignore[d] [Plaintiff's] positive work history"

---

[2] Plaintiff notes that "[t]he ALJ found Torres not credible because he had no issues speaking or understanding English in the 2013 [medical] examination; however, at the hearing he stated he spoke little English" and had an interpreter present. Pl.'s Mot. at 6.

which Plaintiff argues is probative of credibility. Id. at 8 (internal citations omitted). In sum, Plaintiff argues that "[t]he vocational expert testified that a person with the limitations that Torres alleged would not be able to engage in his past relevant work; and since there are no transferable skills a finding of disability is warranted under the vocational-medical grid rules." Id. (citing AR 71).

Defendant responds that the ALJ articulated specific reasons supported by substantial evidence for discounting Plaintiff's allegations of disabling symptoms and functional limitations. Def.'s Mot. at 3. In support, Defendant claims the ALJ appropriately noted that the Plaintiff's allegations of debilitating symptoms and limitations were not supported by the medical evidence of record. Def.'s Mot. at 4 (internal citations omitted). Second, Defendant claims that "Plaintiff's orthopedic and neurological examinations repeatedly yielded generally negative (normal) findings." Id. at 5. Third, Defendant argues that the ALJ provided a "detailed summary of the facts and medical evidence, and his interpretation of and findings based on it" to "sufficiently satisf[y] the legal standard." Id. at 5-6. Fourth, Defendant argues that the "ALJ correctly noted that the opinion evidence (specifically the findings of Dr. Sabourin) did not support Plaintiff's alleged level of debilitating symptoms and limitations." Id. at 6. Fifth, Defendant argues that "the ALJ reasonably considered Plaintiff's daily activities in finding that they were inconsistent with the severity of the symptoms he alleged, and Plaintiff does not challenge any of the ALJ's findings with respect to this factor." Id. at 7. For example, Defendant argues that Plaintiff's testimony at the hearing regarding his activities (e.g., care for his personal hygiene and grooming, prepare meals, go grocery shopping and carry light groceries) contradicted Plaintiff's allegations of disabling symptoms and functional limitations. Id. Sixth, Defendant argues that "the ALJ permissibly considered Plaintiff's treatment history." Id. Seventh, Defendant argues that "the ALJ validly considered inconsistency between Plaintiff's statements and the entire record evidence." Id. at 8. Finally, Defendant argues that contrary to Plaintiff's argument, "prior work record is

17cv2504-GPC-LL

merely one of the various factors the ALJ may consider in evaluating a claimant's testimony, but it is not a determinative factor." Id. at 9.

In his reply, Plaintiff filed a "submission on the record and arguments presented in lieu of a reply brief." Pl.'s Reply at 1. Notably, Plaintiff's Reply does not contain any substantive arguments.

## A. **Relevant Law**

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms. See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation marks and citation omitted). The claimant, however, need not prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom. Id. If the claimant satisfies the first element and there is no evidence of malingering, then the ALJ "can [only] reject the claimant's testimony about the severity of her symptoms . . . by offering specific, clear and convincing reasons for doing so." Id. (internal quotation marks and citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted). An ALJ also may consider the claimant's

work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains. Thomas, 278 F.3d at 958–59 (internal quotation marks and citation omitted); see also 20 C.F.R. § 404.1529(c). If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision. See Thomas, 278 F.3d at 959; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

Neither party contests the ALJ's determination that Plaintiff has the following severe impairments: "degenerative disc disease of the cervical, thoracic and lumbar spine, obesity and diabetes mellitus." AR at 26; see also Pl.'s Mot.; Def.'s Mot. The ALJ also took the "claimant's obesity into consideration, including its potential restrictions, limitations, co-morbidities and risks."[3] AR at 41. Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"—a finding that is not contested by either party—the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied. See AR at 42; see also Lingenfelter, 504 F.3d at 1036; Pl.'s Mot.; Def.'s Mot. Furthermore, neither party alleges that the ALJ found that Plaintiff was malingering. See Pl.'s Mot.; Def.'s Mot. As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms.[4] See Lingenfelter, 504 F.3d at 1036.

---

[3] An ALJ is required to consider all medically determinable impairments of which he is aware, including those that are not "severe," in assessing an individual's residual functional capacity. 20 C.F.R. § 416.945.

[4] The Court acknowledges that on March 28, 2016, Social Security Ruling ("SSR") 16-3p superseded SSR 96-7 regarding how the Social Security Administration evaluates a claimant's subjective symptoms. SSR 16-3 states in relevant part:

This SSR, republished in its entirety, includes a revision to clarify that our adjudicators

The Court will consider Plaintiff's challenges to the ALJ's reasons.

### B. **Specific Testimony**

As an initial matter, the Court finds that the ALJ failed to identify the specific statements Plaintiff made that the ALJ decided were not credible, and thus does not provide the necessary information for meaningful judicial review. See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) ("If the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'" (citation omitted)); Reddick, 157 F.3d at 722.

In the ALJ's written decision, he acknowledged his duty to consider Plaintiff's symptoms and make a finding on the credibility of the statements based on a consideration of the entire case record. AR at 41. Then he paraphrased some of Plaintiff's testimony and statements of record as follows:

> The claimant has reported that he has neck, back, hip, shoulder, elbow, wrist and knee and ankle pain. He has stated that his pain is due to diabetic neuropathy. At the hearing, the claimant testified that he speaks little English. He reported that he is not working presently and last worked in 2010 taking care of his parents. His duties included making sure they had their medications and food, and he did cook for them. He did not have to lift or bathe them.
>
> At the hearing, the claimant testified that he has back pain, which he rated as

---

will apply SSR 16-3p when we make determinations and decision on or after March 28, 2016. When a Federal court reviews our final decision in a claim, we also explain that we expect the court to review the final decision using the rules that were in effect at the time we issued the decision under review. If a court remands a claim for further proceedings after the applicable date of the ruling (March 28, 2016), we will apply SSR 16-3p to the entire period in the decision we make after the court's remand.

SSR 16-3P (S.S.A.) 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ's written decision was issued on March 16, 2016; accordingly, the Court has reviewed the ALJ's decision using the Social Security Ruling in effect at the time of his decision, SSR 96-7. AR 28-47; see generally SSR 16-3P (S.S.A.) 2017 WL 5180304, at *1.

a level 2 or level 3.  He reported taking pain medications such as Naproxen, which helps.  The claimant further mentioned that he is a diabetic on insulin. He reported side effects of upset stomach from the Naproxen, and tiredness and sleepiness from his insulin.  The claimant reported that he is able to drive, but must wear glasses. He stated that he has difficulty sitting, but can sit for 30 minutes.  He opined that at [sic] he could stand in one position for 30 minutes and walk 1.5 blocks with his cane.  The claimant takes his grandchildren to school and has no problems driving.  He has no issues with his personal hygiene and grooming.  He is able to prepare microwave meals and carry light groceries.  He spends his day resting 4-5 times per day due to in part to back pain, and in part due to diabetes. He reported that he enjoys reading Spanish novels, and goes to church on Sundays, but stated that sitting in church is difficult because as it hurts his back.  The claimant reported that he has some issues with tremors, episodically. He noted that his right hand shakes more frequently.  The claimant testified that his father has Parkinson's.  The claimant noted that he will be 'tested for it.' (Parkinson's).

Id. at 41-42. Next, the ALJ stated that although "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible for the reasons explained in this decision." Id. at 42.  Then, the ALJ states that "the claimant's *subjective* allegations have been significantly worse than his subjective findings." Id. (italicized in original). The ALJ only vaguely referred to Plaintiff's testimony noting that "the claimant has reported constant back pain, which reduces his ability to sit, stand and walk." Id. Then the ALJ gave some examples,[5] unsupported by citations to the administrative record, of why the ALJ found Plaintiff's X-rays, consultative exams and neurological exams to contradict Plaintiff's testimony. Id.

_____

[5]  The ALJ noted "[Plaintiff's] X-rays indicate minimal degenerative disc disease, except at C5-C6." AR at 42.  The ALJ also noted that "the claimant was noted to switch his cane and his limp during the consultative examination, which the board-certified orthopedist found unusual." Id.  The ALJ further noted that during Plaintiff's consultative examination, his neck was "extremely stiff," but "when the neck was not being examined (or when he was distracted by other range of motion testing, elsewhere), his neck was not nearly so stiff." Id. Finally, the ALJ noted that "[t]he claimant has alleged neuropathy in part due to his diabetes, yet his neurological examinations have been negative, including his filament test." Id.

Based on no analysis or specific examples from Plaintiff's testimony from the hearing, the ALJ concluded that "[e]ssentially, the undersigned notes significant inconsistencies in the claimant's allegations, and the record as a whole. The undersigned ALJ finds that this is erosive of the claimant's overall credibility." Id.

The ALJ's second reason for finding Plaintiff not credible is because "the claimant had no issues whatsoever speaking or understanding English in 2013 with the consultative examiner, Dr. Sabourin. However, at the hearing, he testified under oath that he speaks 'little English.'" Id. The ALJ's third reason was that the "opinion evidence" including Dr. Sabourin's assessment during the consultative examination was "quite thorough, and largely consistent with the record." Id. Similarly, the ALJ noted that the DDS State Agency physicians' "opined that the claimant is able to perform a wide range of medium level exertional tasks." Id. Fourth, the ALJ considered that Plaintiff "has a Disabled Car placard/plates." Id. at 43. The ALJ noted however, that the handicapped placard was recommended and signed for by Plaintiff's chiropractor, which is "not considered [an] acceptable medical treating source[] for the Social Security Administration." Id. Accordingly, the ALJ concluded that he "need not ascribe weight to [the chiropractor's] opinion, in this case, his support of a handicapped placard." Id. Finally, the ALJ concludes "[a]fter reviewing the record including testimony given at the hearing, the undersigned ALJ finds that the above-referenced residual functional capacity is consistent with the record, and therefore appropriate." Id.

The ALJ's vague references to "significant inconsistencies in the claimant's allegations and the record as a whole" are not specific identifications of which statements are being discredited. Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (holding that "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony" (citing Reddick, 157 F.3d at 722)).[6]

---

[6] Although the court in Holohan rejected the ALJ's reason for his adverse credibility finding, it provides an example of the level of specificity required in identifying the testimony that the ALJ found

Plaintiff made numerous statements in his testimony about his pain and other symptoms, and the ALJ failed to specify which statements he did not believe and to connect each statement to the evidence that undermined it.[7] See e.g., AR at 62-69. Accordingly, the Court finds that the ALJ committed legal error by failing to identify the specific testimony found not credible. See Brown-Hunter, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."); Lingenfelter, 504 F.3d at 1036 ("[T]he Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms."). Because the ALJ erred by failing to identify the testimony he found not credible, the ALJ's conclusions concerning Plaintiff's RFC are therefore not supported by substantial evidence and the Court recommends remand on this basis. See Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. Sept. 14, 2017) ("We set aside a denial of Social Security benefits only when the ALJ decision is based on legal error or not supported by substantial evidence in the record." (internal quotation marks and citation omitted)); Brown-Hunter, 806 F.3d at 495 (finding the ALJ's failure to identify which testimony she found not credible and explain which evidence contradicted that testimony prevented the appellate court from determining whether the ALJ's conclusions were supported by substantial evidence); Lingenfelter, 504 F.3d at 1035 ("Lingenfelter argues that substantial

---

unbelievable. In Holohan, "[t]he ALJ found that *Holohan's testimony that her symptoms had gotten worse since she began treatment with Dr. Oh lacked credibility*." Holohan, 246 F.3d at 1208 (emphasis added).

[7] For instance, Plaintiff testified that he does not sleep all night because the "pain in the back" wakes him "like three or four times" [AR 62]; he usually rests by sleeping "like four or five times" during the day [id.]; he has tremors in his hands and his hands start shaking a few times every day, and that he has difficulty doing things when his hands start to shake [id. at 64]; he has "issues with memory loss" that had worsened in the past year [id. at 66]; his doctor recommended surgery for his back, but due to the risks, he may not be able to walk again [id. at 68]; and he has difficulty concentrating and also has constant numbness and tingling in his feet due to neuropathy from his diabetes [id. at 69].

evidence does not support the ALJ's decision because the ALJ improperly rejected his testimony as to the severity of his pain and symptoms.  We agree.").

Even if the ALJ had adequately specified the testimony he found not believable, the ALJ's proffered reasons fail to meet the clear and convincing standard, for the reasons set forth below.

### C. Plaintiff's English Language Ability

The ALJ also found Plaintiff not fully credible because:

> [T]he claimant had no issues whatsoever speaking or understanding English in 2013 with the consultative examiner, Dr. Sabourin. However, at the hearing, he testified under oath that he speaks 'little English.'

AR at 42. The ALJ found that "the claimant is simply not fully credible secondary to the many inconsistencies in the record." Id.  The Court finds that the ALJ's finding is based on an incomplete summary and mischaracterization of Plaintiff's testimony. The relevant excerpt from the hearing is as follows:

> ALJ: Mr. Torres, you speak English?
>
> CLMT: Yes.
>
> ALJ: Okay.
>
> CLMT: A little bit, but –
>
> ALJ: Okay.
>
> CLMT: -- yes.
>
> ALJ: So, we'll just start the hearing in English. If you need help from the interpreter, just let me know.
>
> CLMT: Okay.

AR 52.  It is clear from the record that when the ALJ asked Plaintiff whether he speaks English that he responded "Yes." Id.  The fact that Plaintiff clarified his response by saying "[a] little bit, but – yes" does not materially change that his response was "yes."  The Court finds that the ALJ mischaracterized and cited to an incomplete excerpt of Plaintiff's

testimony in finding that Plaintiff "testified under oath that he speaks 'little English.'" Id. at 42, 52. Accordingly, the ALJ's finding that Plaintiff is not fully credible on this basis is not sufficient under the required standard.

### D. Opinion Evidence[8]

Next, the ALJ found Plaintiff not credible because he found the opinion evidence of Dr. Sabourin and the DDS State Agency physicians' assessments to be largely consistent with the record. Id. at 42-43. Specifically, the ALJ noted that he "reviewed Dr. Sabourin's assessment during the consultative examination and finds it quite thorough, and largely consistent with the record." Id. at 42. Similarly, the ALJ noted that he reviewed "the DDS State Agency physicians' assessments found at Exhibits 4A and 6A" and noted that "they have opined that the claimant is able to perform a wide range of medium level exertional tasks." Id.

Specifically, the ALJ found:

> As for opinion evidence, as noted above, the undersigned ALJ has reviewed Dr. Sabourin's assessment during the consultative examination and finds it quite thorough, and largely consistent The undersigned ALJ largely concurs with the DDS State Agency physicians' assessments, but notes that they opined the claimant is able to climb ropes and scaffolds only occasionally. However, there is no seeming associative impairment restriction connected to that. Additionally, the DDS has opined that the claimant has positional or postural restrictions and limitations. Specifically, the DDS State Agency

---

[8] Defendant's argument that Plaintiff "conceded" the ALJ's findings regarding opinion evidence is without merit. Def.'s Mot. at 3. Plaintiff has a section in his Motion for Summary Judgment titled "Opinion evidence" and argues that "[t]he ALJ focuses on various opinions in the medical file to find Torres' testimony not credible." Pl.'s Mot. at 7 (citing AR 41-42). The fact that Plaintiff included an argument about Plaintiff's credibility in the same section does not concede the ALJ's finding on that issue.

However, the Court agrees with Defendant that Plaintiff "does not challenge any of the ALJ's findings with respect to [Plaintiff's daily activities]." Def.'s Mot. at 3; see Pl.'s Mot. Accordingly, the Court will not address the ALJ's findings regarding Plaintiff's daily activities herein. Similarly, the Court agrees with Defendant that Plaintiff concedes the propriety of the ALJ's finding with respect to Plaintiff's "complian[ce] with his recommended treatment regimen" by "failing to specifically challenge it." Def.'s Mot. at 7-8; see Pl.'s Mot.. Accordingly, the Court will not address the ALJ's findings regarding Plaintiff's compliance with his treatment regimen and/or whether taking pain medications helped to control his pain herein.

physicians have opined that the claimant is able to perform tasks such as climbing ramps and stairs, stooping, balancing, crouching, kneeling, and crawling frequently. The undersigned ALJ finds no consistent objective medical evidence to substantiate or undergird that assertion. Accordingly, as the undersigned ALJ concurs in part, and disagrees in part, the undersigned ALJ gives the DDS State Agency physicians" [sic] assessments some, but not great weight.

Id.

Whether a claimant's alleged symptoms are consistent with the medical evidence is one of several factors that an ALJ must consider in assessing credibility. Lingenfelter, 504 F.3d at 1040 (referencing Social Security Ruling 96-7p that requires "ALJs to consider all of the evidence in the case record in assessing a claimant's subjective pain and symptom testimony, including: the individual's daily activities; the location, duration, frequency, and intensity of the pain or symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medications; any other treatment or measures used for relief; functional restrictions; and any other relevant factors" (internal quotation marks and citation omitted)). However, the Ninth Circuit instructs that a plaintiff's testimony about symptoms may not be discredited "solely because it is not substantiated by objective medical evidence." Trevizo, 871 F.3d at 679.

Here, the ALJ stated his RFC determination for Plaintiff, claimed that "[a]fter reviewing the record including the testimony given at the hearing, the undersigned ALJ finds that the above-referenced residual functional capacity is consistent with the record, and therefore appropriate;" then he essentially recited the medical evidence that supports his RFC finding. See AR at 41-43. The ALJ's focus on the connection between selected medical evidence and the RFC, instead of Plaintiff's testimony, failed to provide specific, clear, and convincing reasons for disbelieving specific statements from Plaintiff's testimony. See Brown-Hunter, 806 F.3d at 489 ("We hold that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination.")

Additionally, the ALJ failed to even provide an adequate basis for considering the objective evidence of record because he erred by ignoring some medical opinions entirely, and not providing the proper weight to other opinions. The ALJ did not even mention in the RFC determination and related credibility analysis the medical records of Plaintiff's treating physician, Dr. Mirabel Flores, who treated Plaintiff for approximately four years.[9] See AR at 42-43. The record contains notes from many of Plaintiff's appointments with Dr. Flores dating from 2011 through 2015 [id. at 274-282, 297, 359-389], but none of them are cited in the ALJ's opinion. As a result, Dr. Flores' diagnosis and treatment of Plaintiff's impairments and complaints regarding back pain (in connection with his diagnosis for degenerative disc disease of the cervical, thoracic and lumbar spine), dizziness, and fatigue was ignored by the ALJ in his opinion. The ALJ erred by ignoring Dr. Flores' medical opinions and essentially assigning them little weight.[10] Garrison v. Colvin, 759 F.3d 995, 1012–13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that

---

[9] Although the ALJ cherry-picked selective findings from Dr. Flores' reports in his step three analysis regarding Plaintiff's "severe impairments," the ALJ failed to include other findings by Dr. Flores that did not support the ALJ's RFC determination. AR 37-40. For example, the ALJ focused on Plaintiff's treatment notes to support the finding that Plaintiff's "diabetes was under control," [AR 36 (citing Exhibit 2F, page 2; Exhibit 7F, pages 3 and 5; Exhibit 9F, page 10)], but failed to cite any treatment notes from Dr. Flores regarding Plaintiff's back or other pain. See e.g., AR 275 (Dr. Flores' March 8, 2012 treatment note finding that Plaintiff complained of "back pain, worse in neck area radiates down spine. . . pain daily"); AR 278 (Dr. Flores' August 23, 2011 treatment note finding that Plaintiff complained of "chest pains – spontaneously resolve. . . feeling of fatigue, lightheadedness"); AR 281 (Dr. Flores' June 17, 2011 treatment note finding that Plaintiff complained of "fatigue, visual blurriness, lightheadedness"); AR 282 (Dr. Flores' June 10, 2011 treatment note finding that Plaintiff complained of "dizziness, fatigue"); and AR 296 (Dr. Flores' March 8, 2012 Referral Form for an "urgent" referral to Physical Therapy for Plaintiff for a diagnosis of "backache" noting that Plaintiff has "cervical lumbar degenerative disc disease").

[10] The Code of Federal Regulations define a medical opinion for purposes of Social Security determinations as follows: "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527.

17cv2504-GPC-LL

another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

The opinion of a treating doctor generally should be given more weight than opinions of doctors who do not treat the claimant. See Turner v. Comm'r. of Soc. Sec., 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)). If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. (citing Lester, 81 F.3d at 830-31). Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Id. (citing Lester, 81 F.3d at 830-31). This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record." Townsend v. Colvin, 2013 WL 4501476, *6 (C.D. Cal. Aug. 22, 2013) (quoting Lester, 81 F.3d at 830–31); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)). If a treating doctor's opinion is not afforded controlling weight,

> [t]he ALJ must consider the "length and the treatment relationship and the frequency of examination" as well as the "nature and extent of the treatment relationship." . . . In addition, the ALJ must still consider the other relevant factors such as "the amount of relevant evidence that supports the opinion and

17cv2504-GPC-LL

the quality of explanation provided" and "the consistency of the medical opinion with the record as a whole."

West v. Colvin, 2015 WL 4935491, at *8 (D. Or. Aug. 18, 2015) (quoting Orn, 495 F.3d at 631; 20 C.F.R. §§ 416.927(c), 404.1527(c)).

Here, the ALJ erred by giving "substantial weight" to non-treating doctor Dr. Thomas Sabourin, but little (or no) weight to the opinion of Plaintiff's primary treating doctor, Dr. Flores.[11] AR at 42. Similarly, the ALJ gave "some weight" to the DDS State Agency physicians' assessments. Id. Notably, Dr. Flores' name or treatment history was not even mentioned in the ALJ's analysis of the "opinion evidence." Id. Dr. Flores was Plaintiff's primary treating doctor and as such, her opinion should generally have been given more weight than a non-treating doctor such as Dr. Sabourin. See Turner v. Comm'r. of Soc. Sec., 613 F. 3d at 1222. Accordingly, the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence in the record for giving controlling weight to Dr. Sabourin and the DDS State Agency physicians' opinions and little weight to Dr. Flores. See Turner, 613 F. 3d at 1222.

## E. **Plaintiff's Work History**

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's "work history [of] over 25 years." Pl.'s Mot. at 8. Defendant opposes on the grounds that "[p]rior work record is merely one of the various factors the ALJ may consider in evaluating a claimant's testimony, but it is not a determinative factor. Def.'s Mot. at 9 (citing 20 C.F.R. §404.1529(c)(3)). The Court finds that although the ALJ did not explicitly mention Plaintiff's prior work history in the opinion, he may have considered it in accordance with the applicable regulations. Accordingly, the Court **DENIES** Plaintiff's motion on this ground.

---

[11] The Court notes that the ALJ considered the opinions of Plaintiff's podiatrist, John Chisolm, DPM, and Dr. Julio Echegoyne, M.D., Ph.D. AR 39-40.

Notwithstanding this, the Court concludes that none of the additional reasons provided by the ALJ constitute a clear and convincing basis for finding Plaintiff less than fully credible. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment on this issue be **GRANTED**, and Defendant's Cross-Motion for Summary Judgment on this issue be **DENIED**.

### F. <u>Remand v. Reversal</u>

"The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004). On the other hand, if the record has been fully developed such that further administrative proceedings would serve no purpose, "the district court should remand for an immediate award of benefits." <u>Id.</u> "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." <u>Id.</u> (citing <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000), <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002), and <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Ninth Circuit has not definitely stated whether the "credit-as-true" rule is mandatory or discretionary. <u>See</u> <u>Vasquez v. Astrue</u>, 572 F.3d 586, 593 (9th Cir. 2009) (acknowledging that there is a split of authority in the Circuit but declining to resolve the conflict); <u>Luna v. Astrue</u>, 623 F.3d 1032, 1035 (9th Cir. 2010) (finding rule is not mandatory where "there are 'outstanding issues that must be resolved before a proper disability determination can be made'"); <u>Shilts v. Astrue</u>, 400 F. App'x 183, 184-85 (9th Cir. 2010) (explaining that "evidence should be credited as true and an action remanded for an immediate award of benefits only if [the <u>Smolen</u> test is satisfied]").

24

Here, the Court finds that further administrative proceedings would be beneficial as it is not clear from this record that the ALJ would be required to find Plaintiff disabled. Accordingly, this Court **RECOMMENDS REVERSING** the decision of the ALJ and **REMANDING** for further proceedings to address the errors noted above.

## V.    CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED,** and Defendant's Cross-Motion for Summary Judgment be **DENIED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **January 7, 2019.**    The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 14, 2019.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Yist, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  December 18, 2018

_____
Honorable Linda Lopez
United States Magistrate Judge