1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   VICENTE F. TORRES,                    Case No.:  17cv2504-GPC(LL)

12                          Plaintiff,
                                          **ORDER DECLINING TO ADOPT**
13   v.                                   **REPORT AND**
                                          **RECOMMENDATION AND**
14   NANCY BERRYHILL, ACTING              **DENYING PLAINTIFF'S MOTION**
     COMMISSIONER OF SOCIAL               **FOR SUMMARY JUDGMENT AND**
15   SECURITY ADMINISTRATION,             **GRANTING DEFENDANT'S**
                                          **MOTION FOR SUMMARY**
16                          Defendant.    **JUDGMENT**
                                          **[Dkt. Nos. 18, 19.]**
17

18

19                            **INTRODUCTION**

20        Plaintiff Vicente F. Torres ("Plaintiff") filed this action pursuant to 42 U.S.C. §

21   405(g) of the Social Security Act ("Act") seeking judicial review of the final

22   administrative decision of the Commissioner of the Social Security Administration

23   ("Commissioner") denying Plaintiff's application for disability insurance benefits.  (Dkt.

24   No. 1.)  On December 18, 2018, Magistrate Judge Linda Lopez issued a report and

25   recommendation ("Report") that Plaintiff's motion for summary judgment be granted and

26   Defendant's motion for summary be denied and the case be remanded to the ALJ for

27   further proceedings.  (ECF No. 22.)  Defendant filed an objection.  (Dkt. No. 23.)  After

28

1

17cv2504-GPC(LL)

careful consideration of the pleadings, supporting documents, and the applicable law, the Court DECLINES to ADOPT the Magistrate Judge's Report and DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

## BACKGROUND

On October 1, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on October 8, 2011. (Dkt. No. 11, Administrative Record ("AR") at 192-95.) He alleged disability due to back injury, glaucoma, hypertension, arthritis, diabetes, neuropathy and high blood pressure. (AR 210.) The claim was denied initially on April 22, 2013, and upon reconsideration on February 21, 2014, resulting in Plaintiff's request for an administrative hearing. (AR at 92-93, 108-12, 118-22, 124-25.)

On December 17, 2015, Plaintiff appeared with counsel and an interpreter and testified before Administrative Law Judge ("ALJ") Keith Dietterle. (AR 48-71.) On March 16, 2016, ALJ Dietterle determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 8, 2011 through the date of the ALJ's decision. (AR 34-43.) On November 2, 2017, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner. (AR 1-4.)

On December 13, 2017, Plaintiff commenced the instant action seeking judicial review of the Commissioner's decision. (Dkt. No. 1.) On March 19, 2018, Defendant answered and lodged the administrative record with the Court. (Dkt. Nos. 10, 11.) On August 17, 2018, Plaintiff filed a motion for summary judgment alleging the ALJ committed legal error by failing to properly consider Plaintiff's testimony at the hearing. (Dkt. No. 18.) Plaintiff asks the Court to overturn the final decision of the Commissioner and award Plaintiff his disability insurance benefits without remand, or alternatively, to

17cv2504-GPC(LL)

remand the case to the Social Security Administration ("SSA"). (Dkt. No. 18 at 9-10[1].) On September 21, 2018, Defendant filed an opposition to Plaintiff's motion for summary judgment and a cross-motion for summary asserting that the ALJ properly evaluated Plaintiff's testimony and the ALJ's decision is supported by substantial evidence and free from reversible legal error. (Dkt. No. 19.) On October 9, 2018, Plaintiff filed a "Notice of Submission in Lieu of Reply." (Dkt. No. 20.)

In the decision, the ALJ followed the five step sequential evaluation process. *See* 20 C.F.R. § 404.1520. For steps one through three, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 8, 2011, had severe medically determinable impairments including degenerative disc disease of the cervical, thoracic and lumbar spine, obesity and diabetes mellitus, and that none of Plaintiff's impairments or combination of impairments met the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 36-40.) The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work and able to lift and carry up to 50 pounds occasionally and up to 25 pounds frequently, able to stand and walk up to 6 hours in an 8-hour workday and able to sit up to 6 hours in an 8-hour workday. (AR 40.) For the step four determination, the ALJ found that Plaintiff was able to perform his past relevant work as a home attendant. (AR 42.) The ALJ concluded that Plaintiff was not disabled from October 8, 2011 through the March 16, 2016, the date of the decision. (AR 43.)

STANDARD OF REVIEW

**A.     Standard of Review of Magistrate Judge's Report and Recommendation**

The district court's duties in connection with a Report of a magistrate judge are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b). The district judge must "make a *de novo* determination of those portions of the report . . . to which

---

[1] Page numbers are based on the CM/ECF pagination.

17cv2504-GPC(LL)

objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b). The district court need not review *de novo* those portions of a Report to which neither party objects. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003) (*en banc*). In this case, Defendant filed an objection. (Dkt. No. 23.)

**B.      Standard of Review of ALJ's Decision**

A court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as reasonable to support a conclusion." *Id.* The "evidence must be more than a mere scintilla but not necessarily a preponderance." *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that "the ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (citation omitted).

<strong>Factual Background</strong>

**A.      Plaintiff's Testimony**

At the hearing before the ALJ, Plaintiff was 58 years old with a twelfth grade education but he did not graduate high school. (AR 52-53, 67.) He was not working and his last job was as a caregiver in 2010 when he was taking care of his parents. (AR 53.) His duties included making sure they had their medicine and food. (AR 53.) He did not have to carry them or bathe them. (AR 53-54.) Prior to being a caregiver, he delivered automotive parts lifting and carrying about 20 pounds. (AR 54.) He testified he has back pain due to a herniated disc and arthritis. (AR 54-55.) He had been treated by Dr. Maribel Flores who prescribed him Naproxen for his pain. (AR 55-56.) He also has

diabetes which is controlled by taking insulin, as well as glaucoma and high blood pressure. (AR 56-57.) While he has difficulty with his vision, and wears eyeglasses, he is able to drive. (AR 57.) He drives his grandchildren to school and picks them up after school. (AR 59.) He has no issues with personal hygiene and grooming, can prepare meals with a microwave, carries light groceries, watches TV, and enjoys reading Spanish novels. (AR 60-62.)

He testified that he sometimes has difficulty with sitting. (AR 57-58.) He can sit about 30 minutes before he has to get up and start walking. (AR 58.) He can stand about 30 minutes and walk about a block, or block and a half. (AR 58.) He was also prescribed a cane in 2011 which he uses for balance. (AR 58.) The heaviest he can currently lift is about 10 pounds. (AR 58-59.) Due to his back pain, he wakes up three or four times a night. (AR 61.) He rests during the day by lying down four or five times a day. (AR 61.) He attends church services which lasts about an hour. (AR 63.) He also testified he has tremors in his hands, as if he had Parkinson's, a few times during the day. (AR 63-64.) He starts shaking in his hip, head and right hand. (AR 63-64.) His father had Parkinson's but he has not yet been tested. (AR 64.) He also suffers from memory loss such as forgetting things and concentrating. (AR 65, 68.) He testified he has constant tingling and numbness in his feet due to neuropathy stemming from his diabetes. (AR 68.)

**B.    Medical Evidence**

Plaintiff started seeing his treating physician, Dr. Maribel Flores, in June 2011 at Otay Family Health Center and regularly visited her through June 10, 2012. (AR 215, 275-82.) His first visit indicated that Plaintiff was establishing care and had been off medications for five years. (AR 282.) Initially, he had symptoms of dizziness, fatigue, intermittent headaches, visual blurriness, and lightheadedness. (AR 281-82.) Plaintiff's diabetes mellitis and hypertension were diagnosed as "uncontrolled." (AR 281.) As Plaintiff was treated with medication and seen regularly by Dr. Flores, his diabetes was improving by July 21, 2011, (AR 279), and both his diabetes and hypertension were

5

diagnosed as "well controlled" by December 11, 2011. (AR 276.) Dr. Flores consistently recommended diet, exercise and weight loss. (AR 276, 277, 278, 279, 280, 281.)

An x-ray of Plaintiff's cervical spine on February 20, 2012 found "[m]oderate degenerative change at C5-6 with large anterior osteophyte." (AR 298.) It was also noted that there was "[n]o significant disc height narrowing, subluxation or endplate abnormality." (AR 298.) An x-ray of the lumbosacral spine, on the same day, found "[m]inimal multilevel degenerative change." (AR 300.) It noted "[m]inimal spondylosis," "mild diffuse loss of height of the L5 vertebral body without wedge compression," "[n]o significant disc height narrowing, subluxation, or endplate abnormality" "[n]o paraspinous abnormality" and "no abnormal motion on flexion and extension." (AR 300.)

On March 8, 2012, Plaintiff presented with "continued back pain, worse in neck area" which radiates down his spine and when the pain is severe, he takes ibuprofen PM. (AR 275.) Dr. Flores referred him to physical therapy. (AR 296.) Plaintiff went to physical therapy on March 30, 2012, April 3, 2012, April 5, 2012 and April 12, 2012. (AR 290-294.) On April 3, 2012, Plaintiff reported having a 1-2 out of 10 pain in his lumbar. (AR 292.) On April 5, 2012, Plaintiff reported he had less pain in his lumbar than the last visit. (AR 291.) Plaintiff's April 10, 2012 visit to Dr. Flores does not mention his back pain. (AR 274.)

On March 3, 2013, Plaintiff went to the Emergency Room[2] with nausea, vomiting, abdominal pain and had been sick three or four days prior with increasing frequency in urination, dry mouth and fatigue. (AR 330, 333.) He was diagnosed to be in diabetic ketoacidosis, was treated at the ER with saline and an insulin drip, and then transferred to Scripps Memorial La Jolla on March 4, 2013 for admission to the intensive care unit.

---

[2] One hospital record states that on March 3, 2013, he presented to Scripps Encinitas, (AR 333), while another record states he presented at Scripps Chula Vista. (AR 330.)

17cv2504-GPC(LL)

(AR 333.) When he arrived at Scripps Memorial La Jolla, he no longer had any more abdominal pain, nausea or vomiting and was feeling better. (AR 330, 333.) According to the hospital notes, his blood sugars became out of control because he lost his health insurance and was unable to afford most of his medications and had not seen a doctor in a couple of years. (AR 330.) He was treated with hydration insulin therapy and his condition improved and discharged three days later. (AR 328.)

From January 11, 2013 to June 22, 2015, Plaintiff went to San Ysidro Health Center and continued to be seen for follow ups by Dr. Flores. (AR 350-88.) On June 3, 2013, he was seen for hypertension. (AR 383.) On September 27, 2013, December 27, 2013, April 10, 2014, and June 6, 2014, Plaintiff was seen for follow-up visits for diabetes mellitis and hypertension as well as other ailments not related to his alleged disability. (AR 367, 371, 375, 379.) Chart notes indicate that Plaintiff's "diabetes mellitus, type 2 uncomplicated" was well controlled and that Plaintiff should continue diet, exercise and weight loss. (AR 370, 374, 378, 382.) As to his hypertension, Plaintiff was prescribed medication and Plaintiff was advised to limit salt and exercise. (AR 374, 378, 382.) During the December 27, 2013 visit, Plaintiff's osteoarthritis was noted and the doctor recommended being active and taking Tylenol PM or naproxen when pain was severe. (AR 378.) On January 29, 2015, it was noted that Plaintiff's diabetes was stable. (AR 359.) At that time, Plaintiff was compliant with his medication but was not eating healthy and was not very active. (AR 359.) He also complained he was suffering blurred vision, burning of extremities, chest pain, constant hunger, dental disease, diarrhea, dysesthesias, dyspnea, erectile dysfunction, foot ulcers, frequent infections, frequent urination, heartburn, hypoglycemic episodes, impotence, increased fatigue, nocturia, polydipsia, slow healing wounds/sores, weight gain and weight loss. (AR 359, 361-62.) On physical exam, Plaintiff's constitutional, eyes, nasopharynx, neck exam, lymph detail, respiratory, cardiovascular and extremity were noted as "Normal." (AR 362.) The Assessment/Plan noted "Diabetes Mellitus Type 2, Uncomplicated" and recommended "diet, exercise, weight loss and continue current medications." (AR 363.)

7

On June 22, 2015, Plaintiff's diabetes was noted as getting worse even though he was compliant with medication but he was not using his education materials and was not exercising or watching his diet. (AR 350.) The doctor recommended eating a healthy diet, increasing physical activity, keeping hydrated and increasing "lantus to 25U qhs." (AR 352-53.)

Dr. John A. Chisholm, DPM[3], treated Plaintiff on March 27, 2015 for tingling and burning foot pain and heel pain. (AR 346.) He was diagnosed with plantar fasciitis; diabetes II with neuro disorder. (AR 346.) Dr. Chisolm conducted a neurological test and concluded, "[t]ouch, pinprick, vibratory, and proprioception sensations are normal. Patient has good protective sensation as measured by the Semmes-Weinstein monofilament." (AR 346.) An x-ray was negative for fracture or dislocation; small posterior calcaneal spur and "mild DJD forefoot bilateral." (AR 346.) On that visit, he was treated with injection and strapping. (AR 347.) On a return visit, on April 8, 2015, Plaintiff indicated his heels were feeling better and the tingling and burning were also better. (AR 348.) Dr. Chisolm put Cobra pad strapping to both shoes. (AR 349.) The podiatrist doctor noted that Plaintiff was doing much better and he should heal without problems. (AR 349.)

**B.     Consultative Examination**

On April 9, 2013, Plaintiff underwent an orthopedic consultation with Dr. Sabourin, M.D. (AR 310-14.) Dr. Sabourin conducted an examination and reviewed Plaintiff's medical records from Dr. Maribel Flores dated March 8, 2012 and April 10, 2012 and the February 20, 2012 x-ray reports. (AR 313.) His impression was

---

[3] Doctor of Podiatric Medicine. Acceptable medical sources include licensed podiatrists. *Mack v. Astrue*, 918 F. Supp. 2d 975, 982 (N.D. Cal. 2013); *see* SSR 06–03p (licensed podiatrists are acceptable medical sources "for purposes of establishing impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle"). The ALJ incorrectly noted that a podiatrist is not an acceptable medical source, (AR 39), but nonetheless considered Dr. Chisolm's medical report as part of Plaintiff's longitudinal health care.

degenerative disk disease, moderate at C5-C6", "[m]ild thoracic spondylosis", "[m]inimal lumbar spondylosis", and "[g]eneralized pain syndrome, etiology undetermined." (AR 314.)

At the outset, Dr. Sabourin noted that Plaintiff came with a professional interpreter but commented that Plaintiff speaks "excellent English and had no difficulty understanding anything I said and his English even does not have much of an accent." (AR 310.) Plaintiff complained of pain in the neck, shoulders, elbows, writs, upper back, lower back, hips, chest, knees and ankles. (AR 310.) Plaintiff explained he was in a motor vehicle accident in 2001 which resulted in disk problems. (AR 310.) He had been treated for his back and neck problems but the pain became worse over time and it was severe by 2009. (AR 310.) In 2007, he was diagnosed with diabetes and his physician stated he had neuropathy causing pain in his knees, back, and neck. (AR 310.) He also used a cane to help with his balance. (AR 310.)

On examination, Plaintiff sits and stands with normal posture, sits comfortably during the examination, and was able to easily get on and off the examination table, and in and out of a chair. (AR 311.) He was able to toe and heel walk although he claimed he could not. (AR 311.) He walks with a cane in his right hand limping favoring his left lower back, but upon further walking he shifted the cane and limped facing the other side, which "did not make too much sense." (AR 311.) He holds his neck fairly stiff but at the end of the examination he was moving the neck more than he did during the formal examination. (AR 311.) He has generalized tenderness in the cervical area and the thoracic and lumbar area but no spasm, swelling or warmth. (AR 311-12.) Dr. Sabourin noted that while there was poor formal examination on the range of motion test, he bent 70 degrees and was able to sit on the examination table with his legs straight out in front of him. (AR 312.)

As to the shoulders, while his upper extremities revealed pain with any shoulder range of motion, he has full range of motion of the shoulders. (AR 312.) The range of motion of the elbows, wrists, hands/fingers, hips, ankles and feet were "grossly normal

9

and painless." (AR 312-13.) His knees had full range of motion without instability and he did not complain of tenderness. (AR 313.) There was normal motor strength in upper and lower extremities bilaterally on the neurological examination. (AR 313.) "Sensation is intact to pinprick today despite his complaints of neuropathy." (AR 313.) Also, Dr. Sabourin noted no "clonus, spasticity, or rigidity. Babinski test is negative." (AR 313.) Dr. Sabourin stated he could not find any signs of a neuropathy despite complaints of neuropathy from diabetes and while his neuropathy complaints were mainly in the neck and back, the x-rays were relatively normal except at the C5-C6 level. (AR 314.) He concluded that the severity and duration Plaintiff's complaints are in significant disproportion to the determinable conditions. (AR 314.)

In conclusion, Dr. Sabourin concluded Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, could stand and walk six hours in an eight-hour workday and sit for six hours in an eight-hour workday, push and pull limitations are equal to lift and carry limitations, and could climb, stoop, kneel and crouch frequently, has no manipulative limitations and no need for assistive devices. (AR 314.)

## DISCUSSION

Plaintiff alleges that the ALJ failed to properly consider his subjective pain testimony. Specifically, he argues that the ALJ merely summarized the medical evidence and did not provide specific, clear and convincing reasons for rejecting his testimony. (Dkt. No. 18-1 at 6.) Next, Plaintiff argues that the ALJ selectively identified an inconsistency and made an inaccurate characterization or misstated the evidence based on the ALJ's finding that Plaintiff provided inconsistent testimony about his English language ability. Third, Plaintiff maintains the ALJ improperly focused solely on various medical opinions to find Plaintiff's testimony not credible, as opposed to relying on reasons "unrelated to the subjective testimony (e.g., reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (e.g., daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment)." (Dkt.

17cv2504-GPC(LL)

1  No. 18-1 at 8.)  Finally, Plaintiff argues that the ALJ failed to consider his 25 plus years

2  of work history which is probative of credibility.

3      Defendant responds that the ALJ provided specific, clear and convincing reasons

4  to reject Plaintiff's subjective testimony.  Second, the ALJ relied not only on opinion

5  evidence but also considered Plaintiff's treatment history and his daily living activities.

6  Third, an ALJ may consider prior work history but it is not a determinative factor to

7  support credibility.  Finally, the ALJ properly pointed out an inconsistency in Plaintiff's

8  English language ability.

9      In the Ninth Circuit, an ALJ must engage in a two-step analysis concerning

10  whether a claimant's testimony about subjective pain or symptoms is credible.

11  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must

12  determine whether the claimant has presented objective medical evidence of an

13  underlying impairment 'which could reasonably be expected to produce the pain or other

14  symptoms alleged.'"  *Id.* at 1036 (citation omitted).  However, the claimant, does not

15  need to show the impairment "could reasonably be expected to cause the severity of the

16  symptom she has alleged; she need only show that it could reasonably have caused some

17  degree of the symptom.'"  *Id.*

18      Next, if the claimant satisfies the first element and there is no evidence of

19  malingering, then "the ALJ can reject the claimant's testimony about the severity of her

20  symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.*

21  (citations omitted). "General findings are insufficient; rather, the ALJ must identify what

22  testimony is not credible and what evidence undermines the claimant's complaints."

23  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d

24  821, 834 (9th Cir. 1995)). The ALJ's findings must be "sufficiently specific to permit the

25  court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony."

26  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  "In weighing a claimant's

27  credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in

28  his testimony or between his testimony and his conduct, his daily activities, his work

17cv2504-GPC(LL)

record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Smolen v. Chater*, 80 F.3d 1273, 284 (9th Cir. 1996)). To support a finding that the plaintiff was not credible, the ALJ must "'point to specific facts in the record which demonstrate that [the plaintiff] is in less pain than she claims.'" *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) ("It may well be that a different judge, evaluating the same evidence, would have found [plaintiff's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact."). Courts should not 'second-guess' an ALJ's credibility determination. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)). "If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (citation omitted).

In this case, the ALJ concluded that plaintiff's impairments "could reasonably be expected to cause the alleged symptoms." (AR 40.) However, the ALJ concluded that on the second step, Plaintiffs "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (Id.)

**1.      The ALJ Provided Specific, Clear and Convincing Reasons Rejecting Plaintiff's Credibility Concerning His Symptoms**

Plaintiff argues that the ALJ merely summarized the medical evidence to support his RFC determination[4] instead of providing specific, clear and convincing reasons to

---

[4] Plaintiff does not challenge the ALJ's RFC determination.

1  reject Plaintiff's testimony.  Defendant contends that the ALJ's reasoning was supported

2  by substantial evidence.

3       The Magistrate Judge found that the ALJ legally erred by failing to identify the

4  specific statements that the ALJ found not credible at the hearing and did not conduct any

5  analysis concerning statements Plaintiff made at the hearing.[5]  (Dkt. No. 22 at 14.)  In its

6  objection, Defendant contends that the ALJ's proffered reasonings met the clear and

7  convincing standard and is supported by substantial evidence.

8       The Court disagrees with the Report because it incorrectly limited its review of the

9  ALJ's decision to Plaintiff's pain testimony at the hearing as opposed to looking at the

10  ALJ's consideration of pain testimony contained in the record.  *See Macri v. Chater*, 93

11  F.3d 540, 545 (9th Cir. 1996) (the ALJ erred by considering only Plaintiff's testimony at

12  the hearing and disregarded evidence of pain contained in his medical record reported by

13  a doctor and his wife).  The ALJ specifically noted that Plaintiff "reported that he has

14  pain in his neck, upper and lower back, hips, knees, ankles, chest, elbows and wrists" and

15  the "shoulder."  (AR 37, 40.)

16       Next, the Court disagrees with Plaintiff's argument that the ALJ merely

17  summarized the medical evidence and merely focused on various medical opinions to

18  reject Plaintiff's credibility.

19       First, the ALJ concluded the claimant's subjective allegations were inconsistent

20  with the objective medical evidence.  (AR 41.)  The ALJ gave Dr. Sabourin substantial

21  but not great weight because he did not mention Plaintiff's diabetes or obesity.   (AR 41.)

22  Dr. Sabourin explained that while Plaintiff reported constant back pain, affecting his

23  ability to sit, stand and walk, the x-rays indicate minimal degenerative disc disease,

24  except at C5-C6.  (AR 41, 298, 300.)  Moreover, while Plaintiff's alleged neuropathy due

25

26

27  [5] In a footnote, the Magistrate Judge noted that the ALJ provided examples, "unsupported by citations to the administrative record of why the ALJ found Plaintiff's X-rays, consultative exams and neurological

28  exams to contradict Plaintiff's testimony." (Dkt. No. 22 at 15 n. 5.)  The Court disagrees.  The ALJ cited to the record to support his decision. *(See* AR 36-38.)

17cv2504-GPC(LL)

to his diabetes, two neurological exams revealed that Plaintiff had no sensory or vibratory loss, no stocking and glove loss and the filament test was negative.  (AR 41, 42, 346.) The objective medical evidence does not support Plaintiff's alleged severity of his symptom testimony.

While an ALJ may rely on objective medical evidence to discredit Plaintiff's credibility on alleged symptom testimony, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (the ALJ provided clear and specific reasons by relying on opinions of consulting physician to reject Plaintiff's symptom testimony); 20 C.F.R. 404.1526 ("In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you."), an ALJ may not reject Plaintiff's subjective testimony based *solely* on lack of objective medical evidence.  *See Bunnell*, 947 F.2d at 345 ("once the claimant produces objective evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence"); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence. . ."); 20 C.F.R. § 404.1529(c)(2) ("However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

In this case, the ALJ, not only relied on objective medical evidence to reject Plaintiff's credibility, he also considered Dr. Sabourin's subjective findings where he noted inconsistencies in Plaintiff's mobility.  (AR 41.)  Dr. Sabourin noted that Plaintiff's neck was extremely stiff with minimal movements during the formal range of motion examination; however, when the neck was not being examined, or he was distracted by other range of motion testing, his neck was not as stiff.  (AR 311.)  Dr. Sabourin also observed during the exam that Plaintiff would switch his cane from his right hand to his

17cv2504-GPC(LL)

left hand as well as his limp which he noted was unusual.  (AR 311.)  Finally, Dr. Sabourin noted the inconsistency in Plaintiff's ability to speak English.  (AR 310.)

In rejecting Plaintiff's credibility, the ALJ also properly considered Plaintiff's treatment history.  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); 20 C.F.R. § 404.1529(c)(3)(iv) ("An ALJ may consider, among other things, the effectiveness and side effects of any medication a claimant takes or has taken in evaluating the intensity and persistence of symptoms, such as pain, and in determining the extent to which symptoms limits a claimant's capacity for work"); *Tommasetti*, 533 F.3d at 1039 (failure to follow a prescribed course of treatment weighs against a claimant's credibility).

The ALJ noted that Plaintiff rated his back pain at a level 2 or level 3 and that his back pain improves with medication.  (AR 40.)  While Plaintiff suffered severe back pain on March 8, 2012, (AR 275), it appears that physical therapy and/or pain medication helped with the pain.  There are no other subsequent reports of severe back pain. Plaintiff's osteoarthritis is noted on December 27, 2013, and Dr. Flores recommended that he remain active and take naproxen when the pain is severe.  (AR 378.)  Plaintiff's diabetes is well controlled when he is compliant with medication, diet and exercise as noted in the medical records.  (AR 36, 42, 367, 371, 375, 379.)  However, despite Dr. Flores' Plan for Plaintiff to diet/eat healthy and exercise, Plaintiff admitted that he had not been consistently compliant with his diet and exercise regimen.  (AR 42, 350, 359, 367, 371, 375.)  In early March 2013, he was hospitalized for ketoacidosis for three days because he was no longer able to afford his medication as he had lost his health insurance.  (AR 330.)  Once medical treatment was administered, he improved.  (AR 330, 328.)  The record reveals that Plaintiff's symptoms caused by his diabetes and back pain are controlled and stable when he takes his prescribed medication.

The ALJ also, as a secondary ground, rejected Plaintiff's credibility based on the inconsistency on his ability to speak or understand English which was "erosive of the

17cv2504-GPC(LL)

claimant's overall credibility." (AR 41.) He noted that Plaintiff spoke "excellent" English during his consultative exam with Dr. Sabourin but then stated he spoke "little English" at the hearing.[6] (AR 41.) The ALJ observed that a State Agency physician also opined that Plaintiff reported on his application that he only spoke Spanish, (AR 92), but spoke excellent English at his consultative exam. (AR 41.)

On this issue, Plaintiff argues that the ALJ's conclusion concerning Plaintiff's inconsistency on his ability to speak English is an improper mischaracterization of the record. The transcript reveals that Plaintiff stated he spoke English. He also argues that the ability to speak to a doctor at a physical examination is completely different than understanding what is happening at a hearing that he has waited for more than two years. Defendant argues that the record speaks for itself where on his disability report form he wrote that he did not speak or understand English, (AR 209), but Dr. Sabourin noted during the exam that he spoke excellent English. (AR 310.)

In assessing credibility, an ALJ may consider inconsistencies in a claimant's testimony including inconsistencies in a claimant's ability to speak English. *See Le v. Astrue*, 318 Fed. App' x 552, 555 (9th Cir. 2009) (upholding ALJ's credibility finding where, among other reasons, "the ALJ noted contradictory statements regarding [claimant's] literacy and ability to communicate in English"); *Vidal v. Colvin*, No. CV 14-416-SP; 2015 WL 2249990, at *8-9 (C.D. Cal. May 12, 2015) (affirming Commissioner's decision where ALJ discounted plaintiff's credibility, in part, on the basis that she made inconsistent statements about her English language abilities).

In *Vidal*, on the disability report, the claimant stated she could not speak, understand, read, or write more than her name in English, she had requested an interpreter for her hearing but at the hearing, she testified she was able to speak and

---

[6] The ALJ stated that Plaintiff "testified under oath that he speaks 'little English.'" However, a review the transcript reveals that Plaintiff had not yet been sworn under oath when he was asked this question. (AR 51-52.)

17cv2504-GPC(LL)

understand simple conversation in English, could read sometimes and write a little bit. *Vidal,* 2015 WL 2249990, at *8. Moreover, the claimant's medical records did not indicate she had any problems speaking English to her doctors; in fact one doctor noted that she spoke English and was verbal, and an Agency representative noted she spoke "near perfect English". *Id.* The district court concluded the inconsistencies in her English language abilities constituted substantial evidence to reject her credibility. *Id.* at *9.

Here, on his disability report, Plaintiff indicated he could not speak, understand, read or write more than his name in English. (AR 209.) Yet, he spoke "excellent" English as noted by Dr. Sabourin. (AR 310.) Moreover, at the hearing, when asked if Plaintiff spoke English he responded, "[a]little bit, but--" and then said "yes." (AR 51.) The Disability Report where he indicated he did not know any English is inconsistent with his own testimony at the hearing that he speaks English. While the ALJ focused on the inconsistency between the excellent English he spoke with Dr. Sabourin and his hearing testimony where he stated he spoke a little English, the ALJ noted the State Agency physician's report that Plaintiff wrote that he only spoke Spanish on his application. The ALJ's secondary reason for rejecting Plaintiff credibility is supported by substantial evidence in the record.

Finally, Plaintiff argues that the ALJ gave short shrift to Plaintiff's work history by not considering his 25 plus years of continuous work history. Defendant agrees that prior work history is a factor the ALJ may consider in evaluating Plaintiff's testimony but it not a determinative factor as Plaintiff suggests.

Prior work history is a factor among many that the ALJ considers in assessing Plaintiff's subjective testimony. *See* 20 C.F.R. 404.1429(c)(3) ("We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons.") "[W]ork history is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir.

17

2016) ("here the ALJ's silence is not enough to negate the substantial evidence supporting the adverse credibility finding."); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (while ALJ should consider prior work record, "work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony.").

Therefore, contrary to Plaintiff's argument, the failure of the ALJ to specifically consider his prior 25 years of consistent work history from 1978 to 2000 and from 2006 to 2011 is not legal error as work history is one factor among many the ALJ must consider. In this case, there is other substantial evidence in the record to support the ALJ's adverse credibility determination. *See Dugger v. Berryhill*, Case No. 16cv552-CWD, 2018 WL 1413367, at \*5 n. 3 (D. Idaho Mar. 21, 2018) ("While courts recognize that work history may be an appropriate consideration, courts have refused to disturb the ALJ's adverse credibility finding where there was other substantial evidence in support of the same.")

The Court concludes that the ALJ properly rejected Plaintiff's credibility concerning the severity of his pain testimony based not only on the objective medical evidence but also based on the subjective findings of Dr. Sabourin about the nature, severity, and effect of Plaintiff's symptoms, *see Light*, 119 F.3d at 792, Plaintiff's treatment history and the effectiveness of medication on controlling or reducing his symptoms, *Tommasetti*, 533 F.3d at 1039, and the inconsistency in Plaintiff's ability to speak and understand English, *Vidal,* 2015 WL 2249990, at \*8-9. Therefore, the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony which is supported by substantial evidence in the record.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

17cv2504-GPC(LL)

**CONCLUSION**

Based on the above, the Court DECLINES to ADOPT the Report and DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment. The Clerk of Court shall enter judgment in accordance with this Order.

IT IS SO ORDERED.

Dated: March 18, 2019

Hon. Gonzalo P. Curiel
United States District Judge

19

17cv2504-GPC(LL)